LEO H. RAPIER

# 7314

VS

NO. 7314

SUBURBAN BUILDING AND LOAN ASSN.

CHARLES F. CLAIBORNE, JUDGE.

June 4th, 1918.

7314

CHARLES F. CLAIBORNE, JUDGE.

This is a suit to recover the price of erecting a building. The building was destroyed by a hurricane. The question presented is who is to bear the loss, the contractor or the owner; and that depends upon the determination of the fact whether the building was delivered and accepted before its destruction by the hurricane.

The plaintiff, Rapier, alleged that in 1915 he made a contract to erect a residence for the defendant for the price of $3,178.00 payable in five equal installments, that he completely erected said building and on April 1st. 1916 delivered the same to the defendant who accepted the same on said date, and took possession thereof; that defendant has refused to pay him the last three installments amounting to $1906.80, for which plaintiff now claims judgment.

The defendant answered that the building was never completed, was never tendered and was never accepted; but that on the contrary, defendant, refused to accept the building until it was completed; it admitted that the last three payments amounting to $1906.80 remained unpaid because the plaintiff Rapier, had stopped work before anyone of them became due; that subsequently Rapier's bondsman, the United States Fidelity & Guaranty Co., employed Fromherz & Drennan to complete the work; that according to his contract Rapier had bound himself to complete and deliver the building on November 9th, 1915 under a penalty of three dollars a day as damages; that on April 7th. 1916 the building, incomplete and unaccepted, was damaged by a storm; that the Surety Company refused to assume the responsibility for the damage cuased by the storm and to repair it and otherwise complete the building; that the completion of said building would cost $1500.00 for which Rapier and his bondsman are liable; that in addition to said $1500.00,

159

Rapier and his Surety must pay demurrage from November 9th. 1915 to the completion of the building; that the Surety Company is a necessary party, and it called it in warranty. The defendant prayed for judgment in its favor rejecting plaintiff's demand; and that it be authorized to retain the sum of $1906.80 to pay the cost of rebuilding and completing the building, and to satisfy pro tanto the claim for demurrage.

The Surety Company answered that the building had been completed and delivered before the storm of April 7th. it denied that it had undertaken to rebuild it and alleged that defendant had permitted Fromherz and Drennan to complete the building and had thus discharged the Surety Company.

The defendant filed a supplemental answer in which it averred that at an expense of $1376.00 it had completed the building which had been delivered on June 23rd. 1916, or 225 days after the date agreed on by Rapier, equal to a demurrage of $675.00 for which it claimed judgment.

There was judgment in favor of plaintiff for $1906.80 subject to a credit of $426.00 for demurrage, and dismissing the call in warranty.

The defendant has appealed. The plaintiff has not appealed from the judgment condemning him to pay $426.00 demurrage, so that question is not before us.

The building contract with plaintiff stipulates: 5th. payment of $635.60, thirty days after the said building and works are all completed and accepted by said party of the first part, and the acceptance filed in the Mortgage Office. "Provided that in each case of said payments, a certificate shall be obtained from said expert (Henry W. Rolfs) x x x to the effect that the work done is in accordance with the drawings and specifications, and that the payments are properly due",

Section V provides: "It being understood that the building shall be at the risk of the said party of the second part (Rapier) until accepted by said party of the first part (Building Association) as a whole".

The law upon the subject is as follows:

C. C. 2758 (2729) "When the undertaker furnishes the materials for the work, if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner, the loss shall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though duly notified to do so".

As argued by counsel, the burden is upon the plaintiff to prove that the building was completed and delivered. But the "completion" means a "substantial completion". In Dugue vs Levy 114 La. 21 the Supreme Court said: "A substantial performance of the contract is all that the law requires, and the employer will not be permitted to avoid payment because the strict letter of the agreement has not been carried out. Slight deviations, or technical, unimportant, or inadvertent omissions or defects will not bar recovery". Quoting 29A A. & E. Enc. Law (1st. Ed) p 891. See also 30A & E. Enc. Law (2nd. Ed) p. 1221.

"Small and unimportant portions of the work remaining undone are not sufficient to render it not substantially performed so as to preclude the right of a builder to a payment which is not a final payment, if the work can readily be done thereafter and it does not appear that it would not be done if the payment was made". 9 C. J. p 739 § 78-79 note C. See also Hinrichs vs Edmond Realty Co. No. 7254 Ct. App.

Joseph Fromherz testified that he thought he had completed the building some two months before the cyclone that destroyed it, but that Mr. Gondron for whom the Building Association was putting up the house, furnished him a list of items he wanted done, and he finished them; that Mr. Rolfs and Mr. Gondron came together to the work, and Mr. Rolfs said there were some little items to add and he finished those items, and finally about ten days before the cyclone, he met Mr. Rolfs and Mr. Gondron at the building; they asked for nothing more and he turned the key of the front door of the house to them; all the other keys were in the locks; he heard nothing more of them; he could not say whether he gave the key to Mr. Rolfs or to Mr. Gondron but he gave it to one or the other; Mr.

Gondron was killed some time after that, he never got any writing from Mr. Rolfs accepting the building; he never asked for any, nor for any certificate for payment because he understood the whole matter was in the hands of the attorneys.

Mr. C. W. Cryer represented the United States Fidelity & Guaranty Company; he says that Mr. Suthon, the attorney for the defendant company the day before the cyclone of April 7th. 1916, told him he was going to have a meeting in his office in the morning to take over the building, to accept it, to close it out, to have a final settlement of the job; and asked him to be there; he went to Mr. Suthon's office in the morning, and there met Mr. Ray, attorney for the plaintiff; Mr. Rolfs, defendant's expert, walked in with a newspaper in his hand, which gave the information that the house had been damaged by the cyclone; whereupon the meeting adjourned.

Mr. Ray, testifies *plaintiff attorney*, that a day or two before the cyclone Mr. Suthon informed him that the Building Company was ready to settle the Rapier matter, and aksed him to meet him at his office; on several occasions prior thereto Mr. Suthon had made claims for demurrage; he expected the whole matter to be settled then and there including demurrage and to receive payment for the two payments due; he understood that the building was completed and had been accepted; he went to the meeting when Mr. Rolfs produced the paper announcing the damage to the building by the storm; and Mr. Suthon asked to defer the matter to some later date.

On the other hand Henry W. Rolfs, who is the building inspector for the defendant Company, testifies that it is his custom, whenever he is notified by the builder that he has completed the job and he finds that everything is finished, to issue a certificate for the fourth payment which means an acceptance; he was not called on to issue any certificate, and never issued a certificate of acceptance. Being asked: "Did Mr. Fromherz ever complete the building? "he answered:" No sir with the exception of a few things about to complete it". He says further: "I went out there and met Mr. Fromherz, and he

162

was, he wanted, at least, to get rid of the job, that is how he spoke. I said: "I am awfully glad to hear you say that, because I am very tired of coming out here, and up to now everything is acceptable, with the exception of a few little things he had to do".

They were a little outlet on the gallery, a common screen to tack on the porch and a little wire which had to be removed, a little paint work in the kitchen to do, a guarantee for the roof which he had stripped twice, and for the window sills which were not exactly constructed according to plans but which were acceptable with a guarantee; Fromherz never tendered him the keys; does not know whether they were tendered to any one else; he never accepted the building from Mr. Fromherz; Gendron was present at the time of the last interview; he was not notified to attend any meeting at the office of Mr. Suthon just before the storm; he heard about the meeting later on; he did not attend the meeting; the last time he was at the meeting was a few days before the storm; Mr. Fromherz's foreman gave Mr. Gendron a key for the back door, so that they could get in.

O. M. Lind is Secretary of the defendant company; the evidence of acceptance of a building by the company is the issuance of a certificate for the fourth payment by the expert representing the association showing that the building is completed; the company knew that Mr. Rapier's affairs were in the hands of his attorneys and the company had referred these matters to its attorney, Mr. Suthon.

Hugh S. Suthon, attorney for defendant, gave his testimony. It is practically the same as that of Mr. Ray. The only difference between them, as tersely stated by Mr. Suthon, is that Mr. Ray was under the impression that the meeting was for the purpose of getting his money, while Mr. Suthon did not go that far, but admitted that the object of the meeting was to define and establish if possible the relative positions and rights of all parties to this tangled situation with a view of effecting a final settlement. Mr. Suthon says: "I was aware and everybody knew at the time that the building was all

but complete, that there was very little in dispute and that the only thing to be done was to have that final meeting and smooth out the last difficulties and finally accept the building."

We have come to the conclusion, with the District Judge, that this testimony, as a whole, establishes that the building was "substantially" completed on the occasion of the last meeting of Fromherz, Rolfs, and Gandron; that Fromherz arranged this meeting for the purpose of delivering the building as complete; that he tendered it, and that Rolfs indicated only trifling omissions and imperfections in the work, the cost of which was amply covered by the prospective fifth payment due only thirty days thereafter, and the existence of which did not justify the refusal to accept the building. In the language of the Code, the proprietor was in default for not receiving the work, though duly notified to do so. If we believe that Rolfs did not, in so many words, accept the work he did not state that he refused to accept it unless the defects pointed out by him were remedied.

Fromherz did not ask for a certificate perhaps because he knew that the matter was in the hands of attorneys and that there were demurrage counter-claims to be adjusted by them.

It seems that these claims were really the only matters left undone, which the meeting called by Mr. Suthon was intended finally to settle. The building having been tendered became at the risk of the owner, for the reason that the tender was refused without just cause.

But the learned Counsel for the defendant argues that the "acceptance" to be binding on the company must be in writing. We do not so read any language in the building contract from which we have quoted above. The "acceptance" mentioned in the contract is to fix the date of the maturity of the fifth payment, and is the one which the statute requires the owner to file in the mortgage office to establish an initial period of prescription against recording privileges upon his property.

The "certificate" of the expert is for the purpose of obtaining the several payments.

164

But assuming that the contract does require a written acceptance of the work, an owner cannot arbitrarily refuse to accept a completed job, and thus hold off the contractor at his will, any more than he could indefinitely postpone the date of the fifth payment by refusing to record the acceptance required by the contract and the law.

Judgment affirmed
June 4th. 1918.